E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

August 27 2024 8:51 AM

CONSTANCE R. WHITE
COUNTY CLERK
NO: 24-2-10402-5

☐ Expedite
☑ No hearing set
☐ Hearing is set
Date:
Time:
Judge/Calendar:

**SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR PIERCE COUNTY**

| | |
|---|---|
| NORTH PEARL STREET, A LIMITED PARTNERSHIP, a Washington limited partnership, | No. |
| *Plaintiff*, | **COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE JUDGMENT** |
| v. | |
| CITY OF TACOMA, a Washington municipal corporation, | |
| *Defendant.* | |

## I. INTRODUCTION

1. On November 7th, 2023, City of Tacoma voters approved a ballot initiative ("Measure") that amends the City's municipal code provision regulating the residential rental market. The initiative—officially titled the "Landlord Fairness Code Initiative" ("LFC" or "Ordinance") (Ex. A)—includes several separate and unrelated new rules that variously violate Plaintiff's statutory and constitutional rights, both federally and at the state-level.

2. The Measure's title is as follows:



<u>Subject</u>

*Citizens' Initiative Measure No. 1 concerns enacting rental requirements for landlords and rental rights for tenants.*

<u>Concise Description</u>

*This measure would require landlords to comply with health and safety laws before raising rent or evicting a tenant; set limits on certain rental fees; require landlords provide two notices to increase rent and offer relocation assistance when the increase is 5% or more; create a defense against certain student/schoolyear evictions, evictions between November 1 and April 1, and evictions against servicemembers, seniors, families and others with protected status under the measure; and provide penalties and enforcement mechanisms.*

<u>Question</u>

*Should this measure be enacted into law?*

\*\*\*\*\*

3. In the months since the LFC came into effect, developers and current owners within Tacoma's residential-rental market have struggled in good faith to understand the implications of the law, which has made it exceedingly difficult and extra costly for Plaintiff to initiate and maintain unlawful detainer actions against holdover occupants of several of its residential rental units.

4. While the LFC only provides for private enforcement, its defects are such that it is unconstitutional and unlawful on its face. In order to avoid even private enforcement, Plaintiffs and those similarly situated must undertake, or refrain from undertaking, a number of actions that violate their constitutional and statutory rights, pursuant to a law that Defendant and its City Council had no authority to place on the ballot, either because (a) certain provisions are *ultra vires* its home-rule powers; or (b), having previously enacted comprehensive rules governing the residential rental market, Defendant had no power to delegate to the electorate what are, properly, administrative adjustments.

This litigation follows.



## II. PARTIES

5. Plaintiff North Pearl Street, A.L.P. ("Plaintiff" or "Pearl Street"), doing business as Westside Estates Apartments, is an apartment complex located at 922 North Pearl Street in Tacoma that was financed with federal low-income housing tax credits.

6. Defendant City of Tacoma ("Defendant," "City," or "Tacoma") is a first class city of Washington.

## III. JURISDICTION, VENUE, AND STANDING

7. The Superior Court of Pierce County has jurisdiction under RCW 2.08.020, RCW 7.24.010, and RCW 7.24.020.

8. Venue in Pierce County is appropriate under RCW 4.12.020(1), (2), and (3).

## IV. STATEMENT OF FACTS

**A. Tacoma City Council Approves Ballot Initiative**

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this section.

9. After a weeks-long campaign of misinformation from tenants' "rights" advocates that included the Tacoma chapter of the Democratic Socialists of America, on November 7, 2023, City voters approved the Measure by a razor-thin margin of 49.6% to 50.4%—a difference of less than 400 votes. Shortly after the Measure's passage, the City announced that it would not—nor could it—enforce its provisions, punting all enforcement to individual tenants. The Ordinance underlying the Measure came into effect on December 8, 2023. Since then, Plaintiffs and those similarly situated have labored, in good faith, to ensure their compliance with the Ordinance's myriad and often confusing requirements. In so doing, Plaintiff and those similarly situated have expended a tremendous amount of time and resources—far more than they would have, were the Ordinance cleaner and less vague and ambiguous. Orders (Exs. B and C) in *North Pearl Street, A Limited*

PEARL STREET COMPLAINT AGAINST
CITY OF TACOMA FOR VIOLATION OF
CONSTITUTIONAL AND STATUTORY
RIGHTS – 3



1    *Partnership v. Christina Smith and All Other Occupants*, No. 23-2-11178-3 (Pierce Cnty. Super.

2    Ct. June 6, 2024) and *North Pearl Street, A Limited Partnership v. Khandis Sutton and All Other*

3    *Occupants*, No. 24-2-05311-1 (Pierce Cnty. Supr. Ct. Feb. 29, 2023), respectively, for example,

4    demonstrate the procedural hurdles the LFC is and has been imposing on Plaintiff and those

5    similarly situated since the Ordinance took effect. Plaintiff settled these cases, though would **not**

6    have otherwise, had the holdover occupants not been able to shield themselves from full legal

7    accountability via the Ordinance.

8    10. Plaintiff has suffered pecuniary harm and the restraint of its constitutional rights, both

9    facially and as-applied, insofar as the LFC will and has required it and its agents and assigns to

10    expend added costs countering defenses against unlawful detainer actions that themselves depend

11    upon provisions of the LFC.

## V. <u>DECLARATORY RELIEF ALLEGATIONS</u>

13    Plaintiff realleges the preceding paragraphs and incorporates them by reference in this request for

14    declaratory relief.

15    11. Plaintiff hereby requests declaratory relief on the following grounds:

16    12. Under the Fifth Amendment to the United States Constitution, Plaintiffs have a federal

17    right to be free from a taking of their private property for a private purpose, a right to be free from

18    laws that take property for a public purpose, but without just compensation, and a right not to be

19    subject to unconstitutional conditions on their ability to use, and rent, private property. Under the

20    Due Process Clause of the Fourteenth Amendment, Plaintiffs also have a right to be free from an

21    irrational and illegitimate deprivation of their property.

22    13. Under the Contract Clause of the U.S. Constitution (Art. I, §10), governments are forbidden

23    from interfering with the existing obligation of contracts.



14. The Contract Clause of the Washington Constitution (Art. II, §23) forbids the State from impairing the obligations of contracts.

15. Defendant has enacted, and permits the enforcement of, an Ordinance that retroactively and immediately takes private property for a private purpose and without a rational or a reasonable basis. To the extent the LFC serves a public purpose, it takes private property without compensation and imposes an unconstitutional condition and exaction on the lawful use of property.

16. State law preempts the LFC because the former regulates the owner-tenant relationship in several manners directly contravening Tacoma's preexisting Rental Housing Code ("RHC"). Municipal law having "occupied the field," the RHC thus prohibits Defendant from devolving to voters amendments to law that are thereby administrative instead of legislative in nature. *See RHA v. City of Federal Way*, 24 Wash.App.2d 360, 367–68 (2022) ("State law preempts a local ordinance in one of two ways: when state law occupies the field being regulated, leaving no room for concurrent jurisdiction, or when a conflict exists such that the state law and the ordinance cannot be harmonized."). Defendant permitted the balloting, and subsequent enactment, of an Ordinance that is *ultra vires* its municipal powers to do.

17. The LFC also fails the two-part test courts employ when evaluating whether a particular initiative is outside the scope of the initiative power. First, if the actions related to the challenged transportation projects are categorized as administrative, then they are not subject to the power of initiative or referendum. Actions relating to subjects of a permanent and general character are usually regarded as legislative matters, and actions taken on subjects of a temporary and special character are usually regarded as administrative matters. In addition, the power to be exercised is legislative in nature if it prescribes a new policy or plan, whereas it is administrative in its nature

if it merely pursues a plan already adopted by the legislative body or by some power superior to it. Here, the initiative is more properly considered administrative because it ostensibly is to enforce provisions of the RHC.

18. The second part of the test is whether the authority to act was granted to the corporate entity versus a legislative body of the entity. If granted to the corporate entity, then it may be subject to initiative and referendum. Here, no statute gives the power to the corporate body to enact the comprehensive changes implemented by the initiative. It is therefore outside of the initiative power.

19. In permitting the balloting, and subsequent enactment, of same, Defendant also violated the "single subject" rule set forth in Article II, §19 of the Washington Constitution, which, as interpreted, requires there be a "rational unity" between the title of a ballot initiative and, separately, between *all* the provisions thereof. *See American Hotel & Lodging Association v. City of Seattle*, 6 Wash.App.2d 928 (2018) (finding initiative covering safety, health, and pecuniary rights of hotel workers comprise several subjects, notwithstanding their common link); *City of Burien v. Kiga*, 144 Wash.2d 819, 826 (2012) (holding initiative covering several new taxes does not bear a "rational unity," again despite their common link).

20. Further, Defendant's balloting of the Measure violated RCW 29A.72.050, which requires ballot titles include, among other things, a "statement of the subject of a measure" that "must be sufficiently broad to reflect the subject of the measure, [and] sufficiently precise to give notice of the measure's subject matter"; and a "concise description" that must "be a true and impartial description of the measure's essential contents, clearly identify the proposition to be voted on, and not, to the extent reasonably possible, create prejudice either for or against the measure."

1    21. A declaratory judgment as to whether the LFC unconstitutionally takes property, deprives

2    individuals, including Plaintiffs, of their property, creates an illegal seizure, interferes with the

3    obligation of contract, is *ultra vires* Defendant's municipal powers—insofar as it violates (1) the

4    State Constitution's "Single-Subject" Rule; (2) the ballot-title rules set forth in RCW 29A.72.050;

5    (3) the unlawful delegation of administrative authority from a municipal organ to the voters; and

6    runs afoul of (4) the Takings; (5) Due Process; and (6) Contract Clauses of the U.S. Constitution,

7    incorporated against the States via the Fourteenth Amendment, and the Washington Constitution.

8    Such declaratory judgment will clarify the legal relations between Plaintiff and Defendant with

9    respect to enforcement of the Ordinance.

10   ## VI. <u>INJUNCTIVE RELIEF ALLEGATIONS</u>

11   Plaintiff realleges the preceding paragraphs and incorporates them by reference in this request for

12   injunctive relief.

13   22. Plaintiff hereby requests injunctive relief on the following grounds:

14   23. There is a substantial likelihood that Plaintiffs will succeed on the merits of their claims

15   that the LFC unconstitutionally takes property, deprives individuals, including Plaintiffs, of their

16   property, creates an illegal seizure, interferes with the obligation of contract, *is ultra vires*

17   Defendant's municipal powers—insofar as it (a) delegates administrative authority to the voters,

18   violates (b) the "single-subject" rule and (c) RCW 29A.72.050—and is unconstitutionally vague.

19   24. An injunction restraining Defendant from permitting the enforcement of the confiscatory,

20   unconstitutional, and illegal Ordinance on its face and as applied to Plaintiffs—via an order

21   mandating the Tacoma City Council repeal the LFC—will not impair, but rather enhance, the

22   public interest.

23

24

PEARL STREET COMPLAINT AGAINST
CITY OF TACOMA FOR VIOLATION OF
CONSTITUTIONAL AND STATUTORY
RIGHTS – 7



# VII. CLAIMS

### FIRST CAUSE OF ACTION:
### VIOLATION OF SINGLE-SUBJECT RULE

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this first cause of action.

25. Article II, § 19 of the Washington Constitution provides that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title."

26. The Washington Supreme Court interprets this provision to prohibit including within a single bill or initiative's title *or* content more than *one* subject but provides different tests for "general" and "restrictive" titles. The LFC's official "title"—defined under RCW 29A.72.05 as "a statement of the subject of the measure, a concise description of the measure, and the question of whether or not the measure should be enacted into law"—is *general* in nature, insofar as it "pertains to the broad subject" of owner-tenant relations.

27. Because of its general title, in order to pass the "single-subject" test, the City must prove that the contents of the initiative bear a "rational unity" both to that title subject *and* as to one another.

28. The LFC includes several provisions that are not in rational unity with one another and the City cannot demonstrate otherwise.

29. While the LFC "pertains to the broad subject" of owner-tenant relations, it covers several separate and distinct elements of said relationship, including (but not limited to):

   a. No-eviction windows—
       i. Seasonal
       ii. Schoolyear;
   b. Fee caps;

   c. Notice rules;

   d. Owner-subsidized relocation assistance;

   e. Protection from suspect classification; and

   f. Restrictions on screening for criminal histories.

30. The Ordinance therefore covers a vast array of subject-areas unified *only* with respect to those against or for whom they are designed, and are derived from several separate and distinct categories, including (but not limited to): physical safety; education; anti-gouging, due process, and equal protection.

31. These categorical distinctions plainly violate Washington's "single subject" rule, such that the Ordinance is invalid *ab initio* and must be struck.

## SECOND CAUSE OF ACTION:
## BALLOT TITLE IN VIOLATION OF RCW 29A.72.050

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this second cause of action.

32. RCW 29A.72.050 reads, in relevant part:

> *(1) The ballot title for an initiative to the people, an initiative to the legislature, a referendum bill, or a referendum measure consists of: (a) A statement of the subject of the measure; (b) a concise description of the measure; and (c) a question in the form prescribed in this section for the ballot measure in question. The statement of the subject of a measure must be sufficiently broad to reflect the subject of the measure, sufficiently precise to give notice of the measure's subject matter, and not exceed ten words. The concise description must contain no more than thirty words, be a true and impartial description of the measure's essential contents, clearly identify the proposition to be voted on, and not, to the extent reasonably possible, create prejudice either for or against the measure.*

*33.* The Measure's title failed to meet several of the requirements set forth above.

34. First, the *subject* of the Ordinance is not "sufficiently precise to give notice of the measure's subject matter"; nor is it ten words or less, as the RCW requires.



35. Second, the *concise description* of the Measure is not "a true and impartial description of the measure's essential contents"; nor is it thirty words or less, as the RCW requires.

36. Third, the concise description of the Measure does "create prejudice," in this case *for* the Measure and against Plaintiff.

**THIRD CAUSE OF ACTION:**
**UNLAWFUL DELEGATION OF ADMINISTRATIVE AUTHORITY**

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this third cause of action.

37. The Washington Supreme Court employs a two-part test to determine whether a measure is outside of the initiative power. First, whether a measure is legislative, instead of administrative in nature, defining the latter as any bill or initiative that "furthers (or hinders) a plan the local government or some power superior to it has previously adopted." *City of Port Angeles v. Our Water-Our Choice!*, 170 Wash.2d 1, 8 (2010). The LFC is clearly administrative in nature and therefore not allowed. Second, whether a measure is part of authority granted to the corporate body of the local government as opposed to the legislative body that oversees that entity. The LFC does not arise from any specific authority granted to the City of Tacoma.

38. The LFC creates rights and enforcement mechanisms that both further *and* hinder the City Council's "previously adopted" RHCs I and II—and in any case, run contrary to several of the latter's provisions.

39. In particular, the LFC conflicts with RHCs I and II in the following respects, among others:



| RENTAL HOUSING CODE | LANDLORD FAIRNESS CODE |
|---|---|
| Enforced directly by city administration | Enforced through private action |
| For violations with distribution of information, deposit, and installment payments, notice requirements:<br>• First violation $500/unit.<br>• Each subsequent violation is $500/unit.<br><br>For violations with notice to vacate, relocation, retaliation, rental agreements:<br>• $250/day/unit for first 10 days.<br>• $500/day/unit from 11 days until compliance is achieved. | Penalties from $500 up to five times the monthly rent.<br><br>For failure to pay relocation or impose illegal rent increase, no less than three times monthly rent.<br><br>Landlord's noncompliance with anything in this chapter gives tenant defense against eviction. |

## FOURTH CAUSE OF ACTION:
## TAKING OF PRIVATE PROPERTY WITHOUT JUST COMPENSATION

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this fourth cause of action.

**A. Relocation Costs**

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this sub-cause of action.

40. The LFC imposes on Plaintiff, and those similarly situated, relocation costs beyond the maximum permitted under the Fifth Amendment of the U.S. Constitution and Article I, §16 of the Washington Constitution.

41. The Ordinance requires rental property owners, such as Plaintiff, to transfer money to other private persons—their tenants—when the owners exercise their right to raise the next term's rent at or above 5%.

42. This provision therefore is intended to benefit some private parties at the expense of others, an A-to-B transfer which runs counter to the longstanding *Armstrong* principle, which provides that the Takings Clause was "designed to bar Government from forcing some people alone to bear

public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

43. In serving this private purpose and use, the Ordinance's relocation-assistance provisions thereby violate the Public Use Clause of the Takings Clause of the Fifth Amendment, and without any color of state law.

**B. Late Fee Ceiling**

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this sub-cause of action.

44. Each element of the argument upon which Plaintiffs bases their takings claim against relocation assistance is hereby incorporated, in full, with respect to the Ordinance's late-fee ceiling.

**C. No School-Year Evictions**

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this sub-cause of action.

45. The Ordinance restricts otherwise lawful detaining actions during certain periods of the year.

46. The Ordinance violates the Takings Clauses of the U.S. and Washington Constitutions, insofar as it restricts owners' fundamental property right to exclude others from their properties. *See Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063 (2021). Nor is there an overriding fundamental right to justify the subsummation of Plaintiff's right to exclude. *See San Antonio Ind. Sch. Dist. v. Rodriguez*, 419 U.S. 565 (1975).

47. The Ordinance thereby compels owners to host third parties past the expiration or cancellation of the agreed-upon leasehold.

PEARL STREET COMPLAINT AGAINST
CITY OF TACOMA FOR VIOLATION OF
CONSTITUTIONAL AND STATUTORY
RIGHTS – 12



## FIFTH CAUSE OF ACTION:
## VIOLATION OF DUE PROCESS

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this fifth cause of action.

48. The Due Process Clauses of the Fifth and Fourteenth Amendments provide, in relevant part and respectively, that "No person shall . . . be deprived of life, liberty, or property, without due process of law" and "nor shall any State deprive any person of life, liberty, or property, without due process of law."

49. The LFC imposes greater procedural hurdles and costs on unlawful detainer actions than is necessary to achieve the governmental interests involved. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) (holding rental income to be a significant property interest). *See also Rental Hous. Ass'n v. City of Seattle*, 22 Wash.App.2d 426, 455–56 (2022) (adopting the U.S. Supreme Court's balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and finding, *inter alia*, that Seattle's Covid-era LFC equivalent "creates the unnecessary risk that a court will grant a reprieve from eviction to a tenant who does not financially need it.").

50. These include, but are not limited to:

- Penalties from $500, up to five times the monthly rent;
- Failure to pay relocation fees resulting in up to than three times monthly rent; and
- Strict landlord noncompliance resulting in near-absolute defense to eviction.

## SIXTH CAUSE OF ACTION:
## VOIDING OF PRIVATE CONTRACT

Plaintiff realleges the preceding paragraphs and incorporates them by reference in this sixth cause of action.

51. The Contracts Clause of the U.S. Constitution provides, in part, that "No State shall . . . make any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. I, §10, Cl. 1.

1    52. The Ordinance violates said rule insofar as it requires Plaintiff and those similarly situated
2    to take several actions and refrain from certain other actions that are all permitted under several of
3    the lease agreements (sample agreement included as Exhibit D), shielded from full operation under
4    the Ordinance.

5    53. These include, but are not limited to:

- Notice timelines that differ materially between the contracts and the LFC;
- Effective requirement to evict via unlawful detainer action despite contract term permitting self-help eviction; and
- Provision for an up to ten-day notice to vacate due to drug-related activities.

## VIII. **RELIEF REQUESTED**

Plaintiff respectfully requests that the Court provide the following relief:

54. Declare that the LFC violates Articles I and II of the Washington Constitution—specifically and respectively, its single-subject and takings provisions—and is thereby void on its face and as-applied to Plaintiff.

55. Declare that the LFC's title violates RCW 29A.72.050 and is also, thereby, void on its face.

56. Declare that the LFC violates Plaintiff's constitutional rights under the Takings, Due Process, and Contracts Clauses of the U.S. Constitution—and is thereby void on its face and as-applied to Plaintiff.

57. Award Plaintiff damages in an amount yet to be determined, suffered as a result of costs expended and opportunities lost in diligently complying with several LFC provisions as Plaintiff best understood them, in good faith and in light of the law's miasmic language; a detailed breakdown of such costs will be included in a future filing;



58. Require Defendant pay punitive damages sufficient to dissuade other jurisdictions from engaging in similarly egregious conduct in the future;

59. Award Plaintiff all costs incurred in connection with this action, including reasonable attorney's fees;

60. Award any other relief as it deems just or equitable.

DATED this 27th day of August, 2024.

*/s/ Jackson Maynard*
JACKSON WILDER MAYNARD, JR.
WSBA No. 43481
CITIZEN ACTION DEFENSE FUND
111 21st Ave SW
Olympia, WA 98501
(850) 519-3495

*/s/ Sam Spiegelman*
SAM SPIEGELMAN
WSBA No. 58212
CITIZEN ACTION DEFENSE FUND
111 21st Ave SW
Olympia, WA 98501
(201) 314-9505

*Attorneys for Plaintiff North Pearl Street*



# CERTIFICATE OF SERVICE

I, Jackson Maynard, hereby declare under penalty of perjury under the laws of the State of Washington that I am causing a true and correct copy of the foregoing Complaint and Request for Declaratory and Injunctive Relief to be served via legal messenger on this date to Defendants at:

CHRIS BACHA
WSBA No. 16714
TACOMA CITY ATTORNEY'S OFFICE
Tacoma Municipal Building
747 Market Street
Room 1120
Tacoma, WA 98402
253.591.5885
cbacha@cityoftacoma.org

*Attorney for Defendant City of Tacoma*

DATED this 27th day of August, 2024.

*/s/ Jackson Maynard*
JACKSON WILDER MAYNARD, JR.
WSBA No. 43481
CITIZEN ACTION DEFENSE FUND
111 21st Ave SW
Olympia, WA 98501
(850) 519-3495

*Attorney for Plaintiff Pearl Street*