1
2
3
4
5
6        UNITED STATES DISTRICT COURT
7        WESTERN DISTRICT OF WASHINGTON
              AT TACOMA

8  NORTH PEARL STREET, A LIMITED         Case No. 3:24-cv-05794-TMC
9  PARTNERSHIP,
                                          ORDER ON MOTIONS FOR SUMMARY
10                 Plaintiff,             JUDGMENT

11         v.

12  CITY OF TACOMA,

13                 Defendant.

14

15                            **I.    INTRODUCTION**

16         This case arises out of a voter-approved ballot initiative to further regulate the rental

17  housing market in the City of Tacoma. During the November 2023 general election, the City's

18  voters approved Citizen's Initiative Measure No. 1, also known as the Landlord Fairness Code

19  Initiative ("LFC"). As codified in the Tacoma Municipal Code ("TMC"), the LFC's purpose is

20  "protecting families and tenants and reducing homelessness." TMC 1.100.010(1). The LFC

21  requires that landlords give notices before increasing rent, pay relocation assistance when rent is

22  raised beyond a certain threshold, and comply with health and safety laws. It establishes caps on

23  move-in costs, late fees, and damage deposits. And it prohibits evictions at certain times of year

24  or based on a tenant's membership in a protected class. TMC 1.100.020–070. The LFC also

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 1

establishes penalties and procedures when landlords violate these provisions, which may be privately enforced by tenants. TMC 1.100.080. Defendant City of Tacoma has no authority to enforce the LFC.

Plaintiff North Pearl Street ("Pearl Street") is an apartment complex in Tacoma that claims the LFC has made it difficult and costly to evict tenants from its residential units. Pearl Street sued the City, challenging the validity of the LFC on federal and state grounds. Dkt. 1-2. In its amended complaint, Pearl Street asserts that its rights have been violated under the Takings, Due Process, and Contracts Clauses of the United States Constitution. Dkt. 15 ¶¶ 12–13. Pearl Street seeks an injunction "restraining Defendant from permitting the enforcement of the confiscatory, unconstitutional, and illegal Ordinance on its face and as applied to" it "via an order mandating the Tacoma City Council repeal the LFC." Dkt. 15 ¶ 23. Pearl Street also seeks declaratory relief and an eventual award of damages. *Id.* ¶¶ 54–60.

Before the Court are Pearl Street's motion for summary judgment (except with respect to actual damages and permanent injunctive relief) and the City's cross-motion for summary judgment on all claims. Dkt. 22, 23. Having considered the parties' briefing, oral argument, and the relevant record, the Court concludes that Pearl Street lacks Article III standing to sue the City of Tacoma on all federal claims. Without Article III standing, this Court does not have jurisdiction over Pearl Street's federal claims and declines to exercise supplemental jurisdiction over Pearl Street's state law claims. *See* 28 U.S.C. § 1367(c)(3). Because the Court "lacks subject matter jurisdiction over a case that was removed to federal court," the Court REMANDS the case to Pierce County Superior Court. *See Second Amendment Found. v. Ferguson*, 24-760, 2025 WL 1766794, at *2 (9th Cir. June 26, 2025). Pearl Street can continue to pursue all of its claims in that forum. The cross-motions for summary judgment (Dkt. 22, 23) are therefore DENIED as moot.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 2

## II. BACKGROUND

### A. Factual background

On November 7, 2023, Tacoma voters approved a ballot initiative that adds new regulations to the City of Tacoma's residential rental market. Dkt. 15 ¶ 1; Dkt. 15-1 at 56. The measure, Citizen's Initiative Measure No. 1 ("the Initiative" or the LFC), included the following "Concise Description":

> This measure would require landlords to comply with health and safety laws before raising rent or evicting a tenant; set limits on certain rental fees; require landlords provide two notices to increase rent and offer relocation assistance when the increase is 5% or more; create a defense against certain student/school year evictions, evictions between November 1 and April 1, and evictions against servicemembers, seniors, families and others with protected status under the measure; and provide penalties and enforcement mechanisms.

Dkt. 15 ¶¶ 1–2; Dkt. 15-1 at 56. The LFC is codified at Chapter 1.100 of the TMC and went into effect on December 8, 2023. Dkt. 15 ¶¶ 1–2; *see* Dkt. 22 at 31–37.

The LFC is "designed to protect families, promote community, stabilize the rental market, and reduce homelessness." TMC 1.100.010(2). The LFC carries out this purpose by establishing the following requirements:

> 1. Landlords must comply with tenant protection laws before raising rent or evicting a tenant.
>
> 2. Landlords must not charge unfair or excessive fees.
>
> 3. Landlords must give advanced notice of rent increases and pay relocation assistance when significant rent increases require tenants to relocate.
>
> 4. Landlords are prohibited from carrying out student/school-year evictions, cold-weather evictions, and evictions based upon a tenant's status as a servicemember, first responder, senior, family member, health care provider, or educator.
>
> 5. It shall be a defense to eviction for a landlord to be in violation of the Landlord Fairness Code as set forth herein.

TMC 1.100.020.

The LFC also defines penalties and procedures if landlords violate these requirements. TMC 1.100.080. The Initiative authorizes tenants to "enforce the provisions of" the LFC. TMC 1.100.080(1). This includes establishing "penalties of not less than $500 and up to five times the monthly rent" per violation against landlords that violate the LFC as well as providing an affirmative defense against eviction if a landlord is out of compliance. TMC 1.100.080(2)–(3). Although a tenant "or an organization representing tenants" is authorized to seek injunctive relief under the Initiative, the LFC's provisions can be enforced only by private parties. *See* TMC 1.100.080; Dkt. 15 ¶ 4 (Pearl Street stating in its complaint that "the LFC only provides for private enforcement.").

The City has no authority to enforce the LFC. *See* TMC 1.100.080; Dkt. 22 at 37 (The City explaining in a Q&A document that the "Landlord Fairness Code Initiative contains no authorization for administrative enforcement by the City, and its provisions are enforced exclusively by private rights of action."). The City has explained that its enforcement of the Rental Housing Code ("RHC") does not overlap with enforcement of the LFC, even when the prohibited actions are similar. *See* Dkt. 22 at 37. For example, the LFC caps late fees at $10 and requires two notices to increase rent starting at 210 days. *Id.*; *see* TMC 1.100.040(1)(e); 1.100.050(1). By contrast, the RHC, which was established in 2019 and "is enforced through City administrative processes," caps late fees at $75 and requires only one notice to increase rent at 120 days. Dkt. 22 at 37. The City stated that it "will enforce the [RHC] related to its provision for late fees and notices to increase rent." *Id.* But if the landlord's actions are not prohibited by the RHC, but do violate the requirements under the LFC, only "*a tenant can seek to enforce*" the LFC's provisions. *See id.* (emphasis added).

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 4

B.      **Procedural history**

Plaintiff Pearl Street, doing business as Westside Estates Apartments, is an apartment complex located at 922 North Pearl Street in Tacoma. Dkt. 15 ¶ 5. On August 27, 2024, Pearl Street filed this action against Defendant City of Tacoma in Pierce County Superior Court, challenging the legality of the LFC on federal and state grounds. *See generally* Dkt. 1-2. On September 20, 2024, the City removed the case to this Court under 28 U.S.C. § 1331 and based on Pearl Street's federal constitutional claims. Dkt. 1. On January 3, 2025, the Court bifurcated the constitutional and statutory questions of law from any related claims for damages in its preliminary scheduling order. Dkt. 12. Pearl Street filed the operative amended complaint on January 16, 2025. Dkt. 15.

The amended complaint alleges five[1] causes of action: (1) Violation of the Single-Subject Rule of the Washington Constitution, *id.* ¶¶ 24–30; (2) Unlawful Delegation of Administrative Authority, *id.* ¶¶ 31–33; (3) Taking of Private Property Without Just Compensation, *id.* ¶¶ 34–41; (4) Violation of Due Process, *id.* ¶¶ 42–44; and (5) Voiding of Private Contracts under the Contracts Clause, *id.* ¶¶ 51–53.

Pearl Street asserts a facial and as-applied challenge to the LFC. *See id.* ¶ 10. Pearl Street alleges that it has "suffered pecuniary harm and the restraint of its constitutional rights, both facially and as-applied, insofar as the LFC will and has required it and its agents and assigns to expend added costs countering defenses against unlawful detainer actions that themselves depend upon provisions of the LFC." *Id.*

---

[1] Plaintiff's third claim in the amended complaint, Taking of Property Without Just Compensation, alleges state and federal violations. Dkt. 15 ¶¶ 34, 40. Plaintiff's fifth claim, Violation of 42 U.S.C. §1983, *Id.* ¶¶ 45–50, is "not itself a source of substantive rights, but a method of vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 5

But Pearl Street offers limited evidence of the alleged federal constitutional harms it has suffered. The amended complaint states that "Plaintiff and those similarly situated have expended a tremendous amount of time and resources—far more than they would have, were the [LFC] cleaner and less vague and ambiguous." *Id.* ¶ 9. Pearl Street then cites two Pierce County cases that "demonstrate the procedural hurdles the LFC is and has been imposing." *Id.* (citing Dkt. 15-1 at 11–19). Pearl Street alleges that they "settled these cases, though would not have otherwise, had the holdover occupants not been able to shield themselves from full legal accountability via the [LFC]." *Id.* ¶ 9 (emphasis removed). In support of its Contracts Clause claim, Pearl Street attaches a sample lease agreement, alleging that certain actions would be permitted if not "shielded from full operation under the [LFC]." *Id.* ¶ 52 (citing Dkt. 15–1 at 20–53). These include "[n]otice timelines that differ materially," an "[e]ffective requirement to evict via unlawful detainer action" and a provision for an "up to ten-day notice to vacate due to drug-related activities." *Id.* ¶ 53. Pearl Street submitted no other evidence to support its federal constitutional claims in summary judgment briefing. *See* Dkt. 22; Dkt. 24.

Pearl Street seeks a permanent injunction based on its claims that the LFC "unconstitutionally takes property, deprives individuals, including Plaintiff[], of their property" and "interferes with the obligation of contract." Dkt. 15 ¶ 22. Thus, Pearl Street alleges, "restraining Defendant from permitting the enforcement of the confiscatory, unconstitutional, and illegal Ordinance on its face and as applied to Plaintiff[]—via an order mandating the Tacoma City Council repeal the LFC—will not impair, but enhance, the public interest." *Id.* ¶ 23.

Pearl Street also seeks declaratory relief that the "LFC violates Plaintiff's constitutional rights under the Takings, Due Process, and Contracts Clauses of the U.S. Constitution—and is thereby void on its face and as-applied to Plaintiff." *Id.* ¶ 55. Finally, Pearl Street requests an award of damages "in an amount yet to be determined, suffered as a result of costs expended and

opportunities lost in diligently complying with several LFC provisions as Plaintiff best understood them, in good faith and in light of the law's miasmic language." *Id.* ¶ 57. Pearl Street also states that "a detailed breakdown of such costs will be included in a future filing[.]" *Id.*

On April 8, 2025, Pearl Street moved for summary judgment (except with respect to actual damages) and permanent injunctive relief. Dkt. 22. The City responded and cross-moved for summary judgment on May 19, 2025. Dkt. 23. Pearl Street replied on May 30, 2025, Dk. 24, and the City replied on June 9, 2025. Dkt. 26.

The Court held oral argument on July 14, 2025. Dkt. 29. At that hearing, the Court raised sua sponte questions related to Pearl Street's standing to sue for the relief sought against the City when the City has no authority to enforce the LFC. After the hearing, the Court directed the parties to file supplemental briefs on the following questions:

> (1) Whether Plaintiff North Pearl Street's claims for injunctive relief against Defendant City of Tacoma present a case or controversy where Defendant possesses no enforcement authority in connection with the challenged Landlord Fairness Code. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021); *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 522–23 (2d Cir. 2024);
>
> (2) Whether Plaintiff has established standing for each of its claims (Due Process Clause, Takings Clause, Contracts Clause) for each form of relief (injunctive relief and damages) it seeks. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages))

Dkt. 30.

The parties filed supplemental briefs addressing the Court's questions. Dkt. 31; Dkt. 33. Pearl Street also submitted a declaration from its owner. Dkt. 32. The declaration includes several exhibits in which Pearl Street's owner offers evidence of "non-exhaustive procedural hurdles" resulting from the LFC, including tenants' use of affirmative defenses established by the LFC. *Id.* at 2, 5–20. The declaration also includes a damages spreadsheet which Pearl Street's

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 7

owner alleges is a calculation of damages "incurred in seeking equitable and/or legal relief against former tenants" where "at least some portion thereof would not have accrued but-for said exercise [of LFC defenses]." *Id.* at 2, 21. Finally, the declaration attaches an executed lease agreement between Pearl Street and a tenant in which the owner alleges that the LFC has "interfere[d]" with certain terms. *Id.* at 2, 22–30.

Both summary judgment motions are fully briefed and ripe for the Court's review.

### III.   LEGAL STANDARDS

#### A.   Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Here, the parties agree that the material facts are not in dispute, and the Court may resolve the claims made by Pearl Street as a matter of law.

#### B.   Standing

Article III of the U.S. Constitution limits the Court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. For a case or controversy to exist, the party bringing the case must have standing. *Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021). Standing is "an

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 8

indispensable part of the plaintiff's case . . . [and] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In response to a summary judgment motion, the plaintiff "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (citation modified).

The "irreducible constitutional minimum" of Article III standing requires the plaintiff to show the following three elements: "(1) [the plaintiff] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

## IV.     DISCUSSION

### A.     Pearl Street lacks standing to sue the City of Tacoma for its federal claims.

The Court asked the parties to brief standing because "it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (citation omitted); *see also Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1149 (9th Cir. 2024) ("[W]e have an independent obligation to consider standing sua sponte.") (citation modified). "The party invoking federal jurisdiction bears the burden of establishing" Article III standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citation modified). "Thus, at the summary judgment stage, a plaintiff must offer evidence and specific facts demonstrating each element." *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, 894 F.3d 1005, 1012 (9th Cir. 2018)

(citing *Lujan*, 504 U.S. at 561). And, as discussed above, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC*, 594 U.S. 413, 431 (2021).

For the reasons described below, Pearl Street lacks standing to sue the City—whether seeking an injunction, declaratory relief, or damages.

1. *Injunctive relief*

In *Whole Woman's Health v. Jackson*, abortion providers challenged a provision of a Texas statute, S.B. 8, which allowed private citizens to enforce the law's prohibition on abortions through private civil actions. 595 U.S. 30, 35–36. The providers alleged that S.B. 8 violated the federal constitution and sought an injunction barring several defendants from taking any action to enforce the statute, including the attorney general. *Id.* at 36–37. The Supreme Court held that "petitioners d[id] not direct this Court to any enforcement authority the attorney general possessed in connection with S.B. 8 that a federal court might enjoin him from exercising." *Id.* at 43. In dismissing the attorney general as an improper defendant, the Court rejected as too attenuated the hypothetical argument that despite the attorney general's lack of enforcement power today, he "might in the future . . . undertake an enforcement action." *Id.* at 44.

Pearl Street advances two theories that the City enforces the LFC (or presents a "credible threat" of such enforcement), but neither presents a case or controversy against the City. *See* Dkt. 31 at 2–4. First, Pearl Street argues that the City possesses enforcement authority under the LFC because the Tacoma Municipal Code "neither expressly nor impliedly prevents Tacoma from collecting such penalties." Dkt. 31 at 2. Selectively pointing to one part of the municipal code, however, does "not direct this Court to any enforcement authority the [City] possesse[s] in connection with [the LFC] that a federal court might enjoin [it] from exercising." *See Whole Woman's Health*, 595 U.S. at 43. Pearl Street attempts to cite certain private enforcement

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 10

provisions in the LFC that it claims "depend first on municipal determinations of habitability, safety, and what qualifies as 'unfair or excessive fees.'" *Id.* But the mere fact that the LFC references the City's health and safety code and excessive fee provisions does not empower the City to *enforce* such violations if they occur. *See Whole Woman's Health*, 595 U.S. at 43. The City might enforce independent violations of the health and safety code, but any effort to enforce the remedies provided by the LFC remains the exclusive province of private citizens. *See, e.g.*, TMC 1.100.030(2)(b) ("It shall be a defense against eviction that the landlord is, at time of eviction, in violation of tenant protection laws related to health and safety[.]"); TMC 1.100.080(1) ("Any tenant claiming injury from any violation of this chapter shall be entitled to bring an action in Pierce County Superior Court or in any other court of competent jurisdiction to enforce the provisions of this chapter[.]")

Second, Pearl Street argues that even if the LFC does not authorize City enforcement, "the law presents a 'credible threat' that Defendant can and will exercise enforcement powers." Dkt. 31 at 3; *see Lujan*, 504 U.S. at 564 n.2 (explaining that when an injury for standing purposes is not "actual" but "imminent," it must be "certainly impending"). Pearl Street posits that "Defendant could use its broad existing (and any future) regulatory, inspective, and/or licensing powers to find residential-rental owners in violation of this or that ordinance that only then exposes them to the LFC's private-enforcement proviso." *Id.*; *see also id.* at 4 ("In light of these powers and its endorsement of the LFC's stated purpose, there is *at least* a credible threat that Tacoma will exercise its powers to *trigger* private enforcement—which, in turn, could result in serious abrogation of several of Plaintiff's fundamental and constitutional rights.") (emphasis in original). But at the summary judgment stage, Pearl Street has failed to "offer evidence and specific facts" that the City poses a "credible threat" of enforcing the LFC against landlords. *See Ctr. for Biological Diversity*, 894 F.3d at 1012; *see also Elias Bochner, 287 7th Ave. Realty LLC*

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 11

*v. City of New York*, 118 F.4th 505, 517 (2d Cir. 2024) (holding that plaintiff landlords did not demonstrate standing on summary judgment to sue the city because plaintiffs "failed to come forward with a single instance in which the [c]ity sued or threatened to sue any . . . landlord for violating" the contested law).

Instead, Pearl Street's "series of hypotheticals" that the City *could* enforce the LFC belies the evidence in the record and the City's repeated and unqualified disavowal of enforcement authority. *See Whole Woman's Health* 595 U.S. at 43; Dkt. 22 at 37 ("The Landlord Fairness Code Initiative contains no authorization for administrative enforcement by the City, and its provisions are enforced exclusively by private rights of action."); Dkt. 33 at 3 ("As explained in the City's Cross-Motion . . . the City has no enforcement authority with respect to the LFC."). And Pearl Street's speculation that the City will use its power to enforce the health and safety code to somehow purposefully trigger private enforcement of the LFC is far too attenuated to create a credible threat of enforcement. Because the City does not enforce the LFC, nor has Pearl Street offered evidence that the City presents a "certainly impending" threat of enforcement, Pearl Street lacks standing to sue the City. *See Lujan*, 504 U.S. at 564 n.2; *see also Geo Grp., Inc. v. Inslee*, --- F.4th ----, 2025 WL 2396498, at *13 (9th Cir. Aug. 19, 2025) (holding that the lower court erred in reaching the merits of plaintiff's enforcement challenge to a health and safety law against the Attorney General and Governor because, while the law allowed a private right of action for injunctive relief, it "provides no cause of action" to the Attorney General or Governor).

2.   *Declaratory relief and damages*

Pearl Street seeks a declaratory judgment "that the LFC violates Plaintiff's constitutional rights under the Takings, Due Process, and Contracts Clauses of the U.S. Constitution," but it has

also failed to establish standing to pursue such declaratory relief. *See* Dkt. 15 ¶ 55; *TransUnion LLC*, 594 U.S. 413, 431 (2021).

To start, seeking declaratory relief "alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. 659, 672 (2021). In *California v. Texas*, the Court considered a private citizen challenge that the individual mandate of the Affordable Care Act, which set a penalty of $0 for failing to obtain coverage, was unconstitutional. 593 U.S. at 661. As the Court found, plaintiffs did not have standing in part because they could not satisfy the redressability prong of the standing requirement. *Id.* at 671–73. In determining redressability, courts consider "the relationship between the judicial relief requested and the injury suffered." *Id.* at 671 (citation modified). There, the private citizens sought injunctive and declaratory relief. *Id.* The Court first held that injunctive relief was unavailable in part because "there is no one, and nothing, to enjoin." *Id.* at 673 (noting that the Secretary of Health and Human Services "has no power to enforce" the provision against them). The Court then focused on whether "declaratory relief, namely, a judicial statement that the provision they attacked is unconstitutional," could satisfy redressability. *Id.*

The Court first observed that remedies "ordinarily operate with respect to specific parties" and "do not simply operate on legal rules in the abstract." *Id.* (citation modified). Thus, a court does not have jurisdiction over declaratory actions "when the underlying dispute could not *otherwise* be heard in federal court." *Id.* (citation modified); *see also id.* ("[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement."). Because injunctive relief was unavailable and plaintiffs "did not obtain damages," plaintiffs' alleged injuries were not redressable against the government defendants and they lacked standing to pursue declaratory relief. *Id.*

Thus, Pearl Street can only seek declaratory relief against the City if the "underlying dispute" satisfies Article III standing. *Id.* In other words, Pearl Street must identify a "a remedy that will redress" the injuries the City has allegedly inflicted upon it. *Id.* at 672. Pearl Street fails to make this showing. *See Lujan*, 504 U.S. at 561 (Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof").

Pearl Street appears to concede in its supplemental briefing that its injuries could only be redressed by injunctive relief. *See* Dkt. 31 at 6 ("[I]t is likely, as opposed to merely speculative that this injury will be redressed were the Court to strike the LFC's takings-inducing provisions. With those stripped, Plaintiff, tenants, and those similarly situated will revert to the balance of contracted rights and obligations extant prior to the LFC's enactment.") (citation omitted); *id.* at 7 (Greater procedural hurdles and costs of unlawful detainer actions because of the LFC "is the injury-in-fact [for the Due Process Clause claim], which can only be redressed by invalidating the provisions of the LFC that individually and in tandem impose upon Plaintiff undue procedural hurdles"); *id.* at 8 ("The Court can redress these injuries-in-fact" for Contracts Clause violations—including "notice timelines that differ materially between the contracts and the LFC"—"by striking the LFC, in whole or in part."). But as discussed above, Pearl Street cannot pursue injunctive relief against the City because it "has no power to enforce" the LFC. *See California v. Texas*, 593 U.S. at 673; *supra* Sec. IV.A.1. The Court cannot simply enjoin the "legal rules in the abstract" to which Pearl Street objects. *California v. Texas*, 593 U.S. at 673.

Nor can Pearl Street maintain its declaratory action against the City by showing that damages are either fairly traceable to the City or would redress Pearl Street's alleged injuries. *See California v. Texas*, 593 U.S. at 673. First, Pearl Street failed to "set forth by affidavit or other evidence 'specific facts'" of its alleged injuries as required at summary judgment. *See Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)) (citation modified). Pearl Street alleged in

its complaint that it "would not have" reached settlements with tenants in two state court cases if not for the LFC. Dkt. 15 ¶ 9 (citing Dkt. 15-1 at 11–19). Pearl Street also attached to its complaint an unexecuted sample lease, claiming that certain actions in the lease would be permitted if not "shielded from full operation under the [LFC]." *Id.* ¶ 52 (citing Dkt. 15–1 at 20–53). The Court first notes that the settlements that allegedly injured Pearl Street resulted in Writs of Restitution against the tenants and in one case, a judgment entitling Pearl Street to past due rent. Dkt. 15-1 at 13. More consequentially though, Pearl Street has not met its burden to establish an injury at summary judgment. *See Lujan*, 504 U.S. at 561. While "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," the plaintiff "can no longer rest on such mere allegations" in response to a summary judgment motion. *Id.* (citation modified). But that is what Pearl Street has done here. Its allegations do not present "specific facts" of the alleged constitutional injuries it has suffered as required on summary judgment. *See Lujan*, 504 U.S. at 561; Dkt. 15 ¶¶ 9, 52.

      Even if the Court considered Pearl Street's untimely evidence of the damages it has suffered from the LFC, *see* Dkt. 32, Pearl Street's injuries are not fairly traceable to and cannot be redressed by the City. In *Elias Bochner*, a group of landlords challenged the constitutionality of laws enacted by New York City in response to the COVID-19 pandemic, including the "Guaranty Law," which "render[ed] permanently unenforceable personal liability guaranties of commercial lease obligations arising during the pandemic." 118 F.4th at 507. The Guaranty Law "added to the list of specified acts or omissions proscribed" by a separate law that provided commercial tenants "a private cause of action" against landlords and a potential award of penalties and other equitable relief if the landlord was in violation. *Id.* at 509 n.2. After the district court awarded summary judgment to plaintiffs on their Contracts Clause challenge to the Guaranty Law, the city appealed, arguing that the district court lacked subject matter jurisdiction

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 15

to hear the case because the city did not enforce the Guaranty Law. *Id.* at 515, 522. When the Second Circuit addressed the standing issue, plaintiffs only sought declaratory relief against the city. *Id.* at 523.

The Second Circuit held that the district court lacked jurisdiction, first recognizing that "a judgment declaring the Guaranty Law unconstitutional could run only against the City." *Id.* "But if, as plaintiffs conceded on summary judgment, the City does not enforce the Guaranty Law, a declaratory judgment against the City could afford plaintiffs no relief from the injuries they claim flow from its enactment, *i.e.*, the defenses and/or penalties afforded [to] *private parties*[.]" *Id.* (emphasis in original).

The same is true here. Pearl Street "seeks a judgment declaring the [LFC] unconstitutional" which "could run only against the City." *See id.* Pearl Street acknowledged in its complaint that the City does not enforce the LFC. *See* Dkt. 15 ¶ 4 ("[T]he LFC only provides for private enforcement."). Although it now asserts differently in its supplemental brief, *see* Dkt. 31 at 2–3, Pearl Street cannot persuade this Court that a declaratory judgment against the City could afford it "relief from the injuries they claim flow from [the LFC's] enactment" where those alleged injuries result only from *private* enforcement. *See Elias Bochner*, 118 F.4th at 523; TMC 1.100.080(1) ("Any *tenant* claiming injury from any violation of [the LFC] shall be entitled to bring an action[.]") (emphasis added).

That the LFC is only enforced by a private right of action also distinguishes this case from a recent Ninth Circuit decision that found standing for a landlord's Contracts Clause challenge to an eviction moratorium on a motion to dismiss. In *Iten v. Los Angeles*, Los Angeles County passed an eviction moratorium, which, among other provisions, established criminal and civil penalties against landlords who violated the moratorium, including fines of up to $5,000 per day. 81 F.4th 979, 981–982 (9th Cir. 2023). But here, as in *Elias Bochner* and unlike *Iten*, the

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 16

challenged law does not "authorize[] the government defendant to impose penalties." *See* 118 F.4th at 523 n.10; Dkt. 22 at 37 (City stating that the LFC "contains no authorization for administrative enforcement by the City, and its provisions are enforced exclusively by private rights of action."). Because "remedies operate with respect to specific parties" and Pearl Street's alleged injuries cannot be redressed by the City, Pearl Street lacks standing to maintain its declaratory judgment action. *See California v. Texas*, 593 U.S. at 673.

Although Pearl Street cannot sue the City in federal court to block the LFC or declare it unlawful, the Court's ruling does not extinguish its opportunity to challenge the law through other means. For example, if Pearl Street sues a tenant for violating their lease, it could challenge the constitutionality of the LFC if the tenant raises one of its provisions as an affirmative defense. *See* TMC 1.100.080(3). Similarly, if a tenant sued Pearl Steet for violating the LFC, Pearl Street could challenge the contested provision as unconstitutional in seeking dismissal of the tenant's claim. *See* TMC 1.100.080(3). Pearl Street expressed concern at these potential alternatives, stating that "[i]t would be strange indeed if an owner, suffering an unconstitutional deprivation, could only seek redress *after* a trespasser deploys it as a defense or a basis for imposing penalties." Dkt. 31 at 5 (emphasis in original). But while Pearl Street "may have preferred to challenge the [LFC] in this federal action against the City, 'those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments.'" *Elias Bochner*, 118 F.4th at 526 (quoting *Whole Woman's Health*, 595 U.S. at 49). Of course, because this Court has not ruled on the merits of Pearl Street's federal claims, it may also continue pursuing those claims upon remand to the Pierce County Superior Court, which is not constrained by Article III's standing requirements for federal jurisdiction. *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 17

72, 88–89 (1991) ("[P]laintiff's lack of Article III standing would not necessarily defeat its standing in state court.").

B.  **The Court must remand the case to state court.**

"Federal courts are courts of limited jurisdiction[.]" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). And "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citation modified). In removal cases, district courts are required to remand the case to state court if it determines at any time before final judgment that it lacks subject matter jurisdiction to hear the case. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 8 U.S.C. § 1447(c)); *Second Amendment Found.*, 2025 WL 1766794, at *2 (same). This Court lacks jurisdiction over Pearl Street's federal claims because Pearl Street does not have standing to sue the City. *Perry*, 18 F.4th at 630. The Court also declines to exercise supplemental jurisdiction over Pearl Street's remaining claims under Washington state law. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). Because the Court "lacks subject matter jurisdiction over a case that was removed to federal court," the Court REMANDS the case to state court. *See Second Amendment*, 2025 WL 1766794, at *2.

V.  **CONCLUSION**

For the reasons explained above, the Court REMANDS this case to state court. Pearl Street's motion for summary judgment except with respect to actual damages and permanent injunctive relief (Dkt. 22) and the City's cross-motion for summary judgment on all claims (Dkt. 23) are therefore DENIED as moot. The Court further ORDERS:

1. Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for Pierce County in the State of Washington;

2. The Clerk shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for Pierce County, Washington; and

3. The Clerk shall close this case.

Dated this 10th day of October, 2025.

Tiffany M. Cartwright
United States District Judge